1

2

3

4

5

6

7

8

9       **IN THE UNITED STATES DISTRICT COURT**

10      **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12  MARICRUZ AGUIRRE,                        CASE NO. CV-F-04-5690 LJO

13              Plaintiff,                   **DECISION ON SOCIAL SECURITY**
                                             **COMPLAINT**
14      vs.                                  (Docs. 13, 20.)

15  JO ANNE B. BARNHART,
    Commissioner of Social
16  Security,

17              Defendant.
                                          /
18

19                          __INTRODUCTION__

20          Plaintiff Maricruz Aguirre ("plaintiff") seeks this Court's review of an administrative law judge's

21  ("ALJ's") decision finding that plaintiff is ineligible during April 22, 1998 to August 25, 2000 for

22  Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C.

23  §§ 1381-1381d.  Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties agreed to proceed before

24  a United States Magistrate Judge, and by an August 30, 2004 order, this action was assigned to United

25  States Magistrate Judge Lawrence J. O'Neill for all proceedings.  Based on review of the Administrative

26  Record ("AR") and the papers of plaintiff and defendant Jo Anne B. Barnhart, Commissioner of Social

27  Security ("Commissioner"), this Court DENIES plaintiff's request to reverse the Commissioner's

28  determination and to remand for further proceedings to correct legal errors and factual deficiencies.

                                          1

1

## BACKGROUND

2

### Plaintiff's Personal Background

3  Plaintiff is age 40, has a sixth grade education, claims to be illiterate, and lacks vocationally

4  relevant work experience although she worked briefly as a janitor.  (AR 37, 218, 222, 348, 358.)

5

### Administrative Proceedings

6

#### Plaintiff's Original SSI Application At Issue

7  On April 22, 1998, plaintiff protectively filed her SSI application with the Social Security

8  Administration ("SSA") to claim disability since 1996 based on "sick from my liver[,] lots of stomach

9  pain – arthritis in most of my body – bad nerves – also cannot read or write."  (AR 66, 67, 77, 217.)

10  With its July 16, 1998 Notice of Disapproved Claims, SSA denied plaintiff's claim and determined her

11  condition is not severe enough to prevent her to work.  (AR 54.)

12  On August 11, 1998, counsel was appointed for plaintiff.  (AR 21.)  On August 26, 1998,

13  plaintiff filed her Request for Reconsideration to claim she is unable to work.  (AR 58.)  With its

14  September 21, 1998 Notice of Reconsideration, SSA denied plaintiff's claim and determined her

15  condition is not severe enough to prevent her to work.  (AR 60.)

16  On October 27, 1998, plaintiff filed her Request for Hearing by Administrative Law Judge to

17  claim she is unable to work.  (AR 64.)  After an August 16, 1999 hearing, the ALJ issued his December

18  29, 1999 decision to find plaintiff is not disabled and has residual functional capacity to perform light

19  work.  (AR 13-14.)

20  Plaintiff submitted SSA's Appeals Council a January 7, 2000 Request for Review of Hearing

21  Decision/Order to appeal the ALJ's decision.  (AR 8, 390.)  On March 1, 2002, the Appeals Council

22  denied plaintiff's request to the review the ALJ's decision to render the ALJ's decision subject to this

23  Court's review.  (AR 4.)

24  On April 18, 2002, plaintiff initiated her original action to seek this Court's review of the ALJ's

25  decision.[1]  Plaintiff and the Commissioner stipulated to remand to the ALJ to reconsider whether

26  plaintiff was disabled during April 22, 1998 to August 25, 2000 and to reconsider plaintiff's mental

27

28  [1]     Plaintiff's original action was entitled *Maricruz M. Aguirre v. Jo Anne B. Barnhart*, CV F 02-5425 DLB.

1   impairments and residual functional capacity.  (AR 252.)  On January 29, 2003 and pursuant to this

2   Court's order, the Appeals Council remanded the case for a new ALJ decision and to require the ALJ

3   to "further evaluate the claimant's mental impairments by further considering all of the evidence of

4   record, including borderline intelligence indicated by Dr. Starrett . . . and providing sufficient rationale

5   for the findings . . ."  (AR 256-257.)

6          After an August 19, 2003 hearing, the ALJ issued his October 3, 2003 decision to conclude that

7   during April 22, 1998 to August 25, 2000, plaintiff had non-severe depression and the residual functional

8   capacity to perform the full range of light work and was not disabled.  (AR 223-224.)

9          Plaintiff submitted to the Appeals Council her October 22, 2003 Request for Review of Hearing

10  Decision/Order to claim she was disabled prior to August 25, 2000.  (AR 211.)  On March 17, 2004, the

11  Appeals Council denied plaintiff's request for review to render the ALJ's October 3, 2003 decision as

12  the Commissioner's final determination subject to this Court's review in this action.  (AR 208.)

13                          ***Plaintiff's Second SSI Application***

14         On August 25, 2000, plaintiff protectively filed a second SSI application to claim disability since

15  1998 based on liver problems, cirrhosis, rheumatoid arthritis, low back pain, narrowing disc space,

16  Hepatitis C, and depression.  (AR 333.)  With its February 2, 2001 Notice of Disapproved Claims, SSA

17  denied plaintiff's claim and determined plaintiff's condition is not severe enough to prevent her to work.

18  (AR 316.)

19         On February 13, 2001, plaintiff filed her Request for Reconsideration to claim that she is "still

20  disabled."  (AR 320.)  With its March 13, 2001 Notice of Reconsideration, SSA denied plaintiff's claim

21  and again determined that plaintiff's condition is not severe enough to prevent her to work.  (AR 322.)

22         On March 27, 2001, counsel was appointed for plaintiff in connection with her second SSI

23  application.  (AR 322.)  On April 4, 2001, plaintiff filed her Request for Hearing by Administrative Law

24  Judge to claim she is unable to work.  (AR 327.)  After an August 6, 2001 hearing, the ALJ assigned to

25  plaintiff's second SSI application issued his December 27, 2001 decision to conclude plaintiff has been

26  disabled since August 25, 2000.  (AR 204.)  The ALJ found that plaintiff "has serious deficits in the

27  abilities to understand, carry out and remember instructions, use judgment in making work-related

28  decisions, respond appropriately to supervision, co-workers and work situations, and deal with changes

1    in the routine work setting."  (AR 203.)[2]

2    **Relevant Medical History And Records Review**[3]

3    ***Richard A. Starrett, Ph.D., Consultative Psychologist***

4    Richard A. Starrett, Ph.D. ("Dr. Starrett"), a psychologist, conducted a July 2, 1998 consultative

5    psychological evaluation and prepared a report. (AR 124.)  As to plaintiff's history, Dr. Starrett noted

6    that plaintiff completed the sixth grade, had learning problems and did not learn to read and write.  (AR

7    125.)  Dr. Starrett noted: "The patient says that she is very anxious and nervous but has never been

8    treated for anxiety.  The patient was an alcoholic and a drug addict but has been clean and sober for one

9    year."  (AR 125.)  Dr. Starrett further noted that plaintiff takes care of her daily living activities.  (AR

10    125.)

11    As to plaintiff's mental status, Dr. Starrett commented:

12    The patient was alert and cooperative.  The patient was very slow in responding which
      lowered her test results across the board.  There may have been a motivational issue in
13    the testing.  The patient's Mood and Affect were within normal limits.  The patient was
      oriented.  The patient's Attention/Concentration, Fund of Knowledge, and Insight and
14    Judgment were all in the borderline to low range.  (AR 125-126.)

15    Dr. Starrett administered several tests and observed:

16    The patient obtained a Verbal Intelligence Score of 62, a Performance Intelligence Score
      of 52, and a Full Scale Intelligence Score of 54, all in the mild mentally impaired range.
17    These test results seem very low.  They need to be checked against school records and
      prior evaluations.
18
      The patient was administered the Bender-Gestalt.  The patient has problems with
19    Abbreviations and appeared not to put much effort into the task.

20    The patient was administered the Rey's Memory Scale.  She correctly identified four
      items which is highly indicative of not putting any effort into the task and/or malingering.
21    (AR 126.)

22    Dr. Starrett's diagnostic impressions were:

23    Given the test results and clinical data, if this individual put her full effort into the tasks
      she is more likely functioning in the borderline range.  There is some indication of lack
24    of effort on the patient's part.  Her test results need to be verified against school records

25    _____

26    [2]    That ALJ decision contributes to the matters at issue before this Court in this action.

27    [3]    Since plaintiff merely challenges the ALJ's evaluation of plaintiff's mental status, including borderline
      intellectual functioning, prior to August 25, 2000, this Court need only address the medical records pertinent to plaintiff's
28    limited claim before this Court.

4

and the Regional Center records to see if this individual truly is at the low end of the mild mentally retarded range. This does not seem accurate. (AR 127.)

As to prognostic impressions, Dr. Starrett noted:

The patient should be able to relate adequately to others. This individual should be able to work at simple tasks, she has in the past. This individual, with additional vocational training and placement should be able to learn more complex tasks. The patient should be able to handle stress in the work environment, in a simple task environment.

In summation, this individual appears to have a lot of health problems and addictive behaviors. This may be her primary limitation. This also need to verified. Her records need to be obtained to verify her intellectual functioning. The current tests do not seem to be reflective of the patient's IQ. (AR 127.)

### Jonathan M. Gurdin, M.D., Consultative Orthopedist

Jonathan M. Gurdin, M.D. ("Dr. Gurdin"), an orthopedist, conducted an October 7, 1999 consultative orthopedic evaluation and noted that plaintiff "gave very poor cooperation" and "very poor effort" during portions of his examination. (AR 190, 191.) Dr. Gurdin concluded: "The patient was difficult to evaluate with her apparently exaggerated pain response. The objective physical findings were rather minimal. There appears to be a substantial discrepancy between what the patient is capable of doing and what she is willing to attempt." (AR 192.)

### Iyengar Malini, M.D., Consultative Psychiatrist

Iyengar Malini, M.D. ("Dr. Malini"), a board-certified psychiatrist, conducted a consultative evaluation of plaintiff and prepared a November 27, 2000 report. (AR 472.) Dr. Malini noted a Polyarthralgia diagnosis with apparently exaggerated pain response as per Dr. Gurdin. (AR 472.) Dr. Malini had reviewed Dr. Starrett's psychological testing. (AR 474.)

As for plaintiff's history, Dr. Malini noted plaintiff's admitted history of alcohol abuse during ages 18 to 32 and her four-year sobriety. (AR 472.) Dr. Malini further reported plaintiff's claims of not learning to read or write and dropping out of the seventh grade. (AR 473.) Dr. Malini noted that plaintiff stays home, receives her daughter's help with cooking and cleaning, does not drive, and depends on her daughter "to take her around." (AR 473.)

As for mental status, Dr. Malini noted plaintiff "is well groomed and cheerful," had a steady gait and good eye contact, and was friendly and pleasant to talk to. (AR 473.) Dr. Malini found plaintiff's speech was coherent and relevant, her mood was unremarkable, her affect was full and appropriate, her

thought process was goal oriented and logical, her memory was grossly intact, her concentration was adequate, her insight was fair, and her judgment adequate for herself.  (AR 474.)  Dr. Malini commented: "She appeared to have average intelligence even though her psychological testing reveals questionable borderline mild mental retardation."  (AR 474.)

Dr. Malini diagnosed depressive disorder, not otherwise specified, and alcohol abuse in remission and a current GAF of 50.  (AR 474.)  Dr. Malini concluded:

> From a psychiatric standpoint, she is able to understand, carry out and remember simple instructions.  She is able to relate to co-workers, supervisors and the public in general. She is able to take public transportation.  She is able to accommodate herself to usual work situations and changes in routine work settings.  She is able to have sustained concentration, persistence and pace.  (AR 474.)

### *Psychiatric Review Technique*

Josefina A. Collado, M.D. ("Dr. Collado"), a non-examining psychiatrist, completed a January 29, 2001 Psychiatric Review Technique to conclude plaintiff's impairment(s) are not severe.  (AR 483.) On March 2, 2001, Lavanya Bobba, M.D. ("Dr. Bobba"), agreed with Dr. Collado.  (AR 483.)

### **Plaintiff's Activities And Testimony**[4]

### *Questionnaires And Reports*

Plaintiff completed a June 11, 1998 Vocational Report to note that she worked as a janitor for a few months in 1998 as part of the GAIN welfare program. (AR 71.)

Plaintiff completed an undated Disability Report to claim that her disabling conditions of liver problems, stomach pain, arthritis, bad nerves, and illiteracy started in 1996.  (AR 77.)

Plaintiff completed an August 11, 1998 Reconsideration Disability Report to claim that her liver impairment and knee arthritis have worsened to cause trouble in daily living activities.  (AR 88)

Plaintiff, with her sister's assistance, completed a September 8, 1998 Daily Activities Questionnaire to note that she lives with her son and daughter.  (AR 100.)  On an average day, plaintiff cleans her home and watches television.  (AR 100.)  Plaintiff has no difficulties to care for her personal needs.  (AR 100.)  Plaintiff's daughter helps plaintiff to cook.  (AR 101.)  Plaintiff grocery shops twice

---

[4]     Since plaintiff merely challenges the ALJ's evaluation of plaintiff's mental status, including borderline intellectual functioning, prior to August 25, 2000, this Court need only address plaintiff's activities and testimony pertinent to plaintiff's limited claim before this Court.

a month. (AR 101.) Plaintiff performs household chores, including dusting, washing dishes and making beds. (AR 101.) Plaintiff needs assistance to mop, vacuum, and arrange the furniture and heavy things. (AR 101.)  Plaintiff watches television every day and listens to the radio occasionally.  (AR 102.)  Plaintiff needs no help to leave her home to go to the store or to the doctor.  (AR 102.)  Plaintiff has no problem getting along with others.  (AR 103.)  Plaintiff cares for her son, including feeding and bathing him and taking him to school.  (AR 103.)  Plaintiff attends church once or twice a week.  (AR 103.)  Plaintiff is confused when "people are talking all at once." (AR 104.)  Plaintiff does not read and usually needs things explained.  (AR 104.)  Plaintiff's pain forced her to cease her janitor work.  (AR 104.)

Plaintiff's sister completed a September 8, 1998 Daily Activities Questionnaire (Third Party Information) to note plaintiff has no difficulties with plaintiff's personal needs. (AR 95.) Plaintiff cooks with the help of plaintiff's daughter. (AR 95.) Plaintiff performs household chores, including making beds, washing dishes and dusting, and plaintiff's daughter helps with heavier cleaning.  (AR 96.) Plaintiff lacks a driver's license, does not drive, and takes public transportation.  (AR 96.)  Plaintiff listens to the radio and watches television. (AR 97.)  Plaintiff does not read well, and her sister assists to complete forms. (AR 97.)  Plaintiff assists her son to dress. (AR 97.)  Plaintiff attends church twice per week.  (AR 97.)  Plaintiff does not exhibit unusual behavior or fears.  (AR 98.)

With her sister's assistance, plaintiff completed an August 11, 2000 Disability Report Adult to note that she is able to read and write "very little" English. (AR 341.)  Plaintiff claimed she has been unable to work since 1996 due to liver problems, rheumatoid arthritis, hepatitis C, slight cirrhosis of liver, back problems and depression.  (AR 342.)  Plaintiff's condition prevented her to complete her janitor job in the GAIN welfare program.  (AR 342.)  Plaintiff completed seventh grade and attended no special education classes.  (AR 348.)

Plaintiff completed an undated Daily Activities Questionnaire to note that she does light house work but needs "breaks in between." (AR 370.) Plaintiff also does "light cooking" and shops every two weeks.  (AR 371.)  Plaintiff watches television two hours per day.  (AR 372.)  Plaintiff leaves her home for doctors' appointments and shopping.  (AR 372.)  Since plaintiff does not drive, she rides the bus. (AR 372.)  Plaintiff is forgetful and loses things.  (AR 374.)

Plaintiff's sister completed an October 22, 2000 Daily Activities Questionnaire (Third Party

1   Information) to note that plaintiff usually watches television during the day.  (AR 376.)  Plaintiff has no

2   problems to groom herself, and plaintiff's daughter assists with cleaning the house.  (AR 377.)  Plaintiff

3   cooks easy to prepare meals.  (AR 377.)  Plaintiff can usually figure out her bills but at times asks for

4   assistance.  (AR 378.)  Plaintiff has forgotten doctors' appointments and locked her keys in her home.

5   (AR 380.)

6                          ***Plaintiff's August 16, 1999 Hearing Testimony***

7        At the August 16, 1999 ALJ hearing, plaintiff testified that she can read and write "very little."

8   (AR 27.)  Plaintiff completed the sixth grade and attended regular, not special education, classes in Los

9   Angeles.  (AR 27.)  Plaintiff worked as a janitor as part of the GAIN welfare program.  (AR 28.)

10  Plaintiff lacks a driver's license.  (AR 27, 37.)

11       Initially, plaintiff testified she remembers neither completing psychological or IQ tests nor seeing

12  Dr. Starrett, the consultative psychologist.  (AR 29.)  On further prompting she remembered portions

13  of the testing.  (AR 30.)  Plaintiff  was not up for the testing because she was not feeling well and her

14  stomach hurt.  (AR 30-31.)  Plaintiff testified:

15       Q.    Okay.  So you didn't put your best effort into the test?

16       A.    No.  I didn't really know how to do it too good, either.

17       Q.    Okay.  So you kind of combination of not feeling that you were performing well on the
              test, plus you didn't really put a good effort into it?
18
19       A.    No.

         Q.    Okay.  All right. Okay.
20
         A.    I'm sorry, I didn't know what you's talking about.  (AR 31.)
21

22       Plaintiff lives with her two children.  (AR 43.)  On a normal day, plaintiff cleans up "a little bit,"

23  straightens her house and cooks.  (AR 43.)  Plaintiff's daughter "helps me out a lot."  (AR 43.)  Plaintiff

24  attends church.  (AR 44.)

25       Pain interferes with plaintiff's concentration and thinking.  (AR 38.)  Plaintiff stopped drinking

26  alcohol in 1996.  (AR 41.)

27                         ***Plaintiff's August 19, 2003 Hearing Testimony***

28       At the August 19, 2003 ALJ hearing, plaintiff testified that she attended school "to about the

seventh grade" in Los Angeles.  (AR 236.)  Plaintiff is able to read and write English "barely a little bit. Not that much."  (AR 236.)  Plaintiff worked briefly as a janitor in the GAIN welfare program, cleaned windows and toilets but stopped because she "was ill" from arthritis and liver disease.  (AR 237, 240.) Plaintiff feels depressed but takes no anti-depressant medication because of her liver condition.  (AR 243.)  Plaintiff has received no mental health treatment.  (AR 243.)

### *Vocational Expert Testimony*

Vocation expert Linda Ferra ("Ms. Ferra") testified at the August 19, 2003 hearing.  As a hypothetical, the ALJ asked Ms. Ferra to assume a person who is: (1) plaintiff's age; (2) illiterate; (3) limited to light exertion; and (4) has a janitor work history.  (AR 247.)  Ms. Ferra testified based on plaintiff's specific work restrictions and vocational profile, plaintiff would be able to perform her past janitorial and other light work.  (AR 247.)

As his first hypothetical, plaintiff's attorney asked Ms. Ferra to assume ability to: (1) do simple, repetitive tasks; and (2) sit, stand and walk two hours for a total of six hours in an eight-hour workday. (AR 248.)  Ms. Ferra opined there is no work for such limitations to constitute full-time work.  (AR 248.)  As his second hypothetical, plaintiff's attorney asked Ms. Ferra to assume ability to: (1) lift up to 10 pounds; (2) sit only 15 minutes at a time; (3) stand only 15 minutes at a time; (4) kneel, stoop or squat; but (5) trouble with bimanual dexterity.  (AR 248.)  Ms. Ferra opined there would be no jobs available with such limitations.  (AR 248.)

### **The ALJ's Findings**

In his October 3, 2003 decision, the ALJ identified the general issue as whether plaintiff was disabled during April 22, 1998 to August 25, 2000. (AR 217.)  In determining plaintiff was not under a disability during April 22, 1998 to August 25, 2000 and ineligible for SSI during that period, the ALJ found:

1.   During April 22, 1998 to August 25, 2000, plaintiff had severe impairments of spondylolisthesis at L5-S1, hepatitis C with cirrhosis and rheumatoid arthritis.[5]

2.   These medically determinable impairments did not meet or medically equal an

---

[5]   The ALJ also found plaintiff had non-severe impairments of mild depression and pulmonary disease. (AR 218.)

impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

3.   Plaintiff's credibility was poor and her testimony appeared to be exaggerated.

4.   During April 22, 1998 to August 25, 2000, plaintiff had the residual functional capacity[6] to lift and carry 20 pounds occasionally and 10 pounds frequently and to sit, stand or walk six hours each in an eight-hour day.

5.   Plaintiff has no past relevant work history.

6.   Plaintiff completed the sixth grade but claims to be illiterate in English.

7.   During April 22, 1998 to August 25, 2000, plaintiff had the residual functional capacity to perform the full range of light work.

8.   Based on an exertional capacity for light work and plaintiff's age, education and work experience, Rules 202.16 or 202.17 of the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2, directs a "not disabled finding."  (AR 218, 224.)

The ALJ "strongly recommended that a continuing disability review be conducted with regard to her current disability status, in view of the claimant's young age and evidence of malingering."  (AR 224.)

## DISCUSSION

### Standard Of Review

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[7]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance,

---

[6]   Residual functional capacity is the most a person can do despite his/her limitations.  20 C.F.R. § 416.945.

[7]   "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

10

1  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such

2  evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S.

3  at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

4         The record as a whole must be considered, weighing both the evidence that supports and detracts

5  from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is

6  substantial evidence to support the administrative finding, or if there is conflicting evidence that will

7  support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

8  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987)*.*  If the evidence is susceptible to more than

9  one rational interpretation, the court may not substitute its judgment for that of the Commissioner.

10  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

11  Cir. 1999).

12         This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

13  is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

14  whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).  Plaintiff bears the burden to prove that

15  she is disabled which requires presentation of "complete and detailed objective medical reports of her

16  condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

17  (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).  "A decision of the ALJ will not be reversed for

18  errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

19         Here, the focus of plaintiff's disability claim is borderline intellectual functioning.  As discussed

20  below, this Court finds that the ALJ properly evaluated the evidence and that his conclusion that plaintiff

21  was not disabled during April 22, 1998 to August 25, 2000 is based on proper legal standards and

22  substantial evidence.

23                    **Borderline Intellectual Functioning**

24         Plaintiff seeks this Court's further remand on grounds the ALJ failed to "properly consider the

25  finding of borderline intelligence."  Plaintiff focuses on a portion of Dr. Starrett's diagnostic impression

26  that if plaintiff "put her full effort into the tasks she is more likely functioning in the borderline range."

27  Plaintiff argues that "it is evident that she is functioning with borderline intellectual functioning."

28  Plaintiff claims that the ALJ committed further error regarding plaintiff's borderline intellectual

11

1   functioning by "conjuring support for his conclusion out of mid air."

2       The Commissioner responds that the ALJ properly evaluated plaintiff's "alleged mental

3   impairment of borderline intellectual functioning" and properly based his finding on Dr. Starrett and Dr.

4   Malini's consultative examining opinions.

5       The ALJ explained his finding as to plaintiff's mental status:

6          . . . while I.Q. scores obtained on testing were consistent with mild mentally impaired
           range, the examiner did not consider them valid based on the claimant's poor effort, as
7          the claimant appeared to be malingering (Exhibit 3F). Further, despite the claimant's
           allegations, at the hearing she appeared alert, understood all questions, and answers were
8          appropriate. There was no evidence of a low I.Q. or any signs of depression. Based on
           her presentation, I must agree with the above opinion of Dr. Starrett (Exhibit 3F); and
9          also Dr. Malini, who found the claimant of average intelligence in November 2000
           (Exhibit B7F, page 3). (AR 221.)

10

11      "[T]o the extent that [a examining consultative physician's] opinion rests on objective clinical

12  tests, it must be viewed as substantial evidence that [the claimant] is no longer disabled." *Allen v.*

13  *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). As noted by plaintiff, "the Commissioner must provide

14  'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining [consultative]

15  physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

16      The gist of Dr. Starrett's opinion does not stretch as far as plaintiff suggests. Dr. Starrett

17  conditioned his "borderline range" comment on plaintiff's use of full effort. Dr. Starrett questioned

18  plaintiff's test results, pointed to an indication of "lack of effort" and advocated that her results "be

19  verified" with other records. (AR 127.) Even plaintiff acknowledged a lack of her best effort. (AR 31.)

20  Despite test results not appearing "reflective" of plaintiff's I.Q., Dr. Starrett found plaintiff should be

21  able "to relate adequately to others," "to work at simple tasks," and "to handle stress in the work

22  environment, in a simple task environment." (AR 127.) The inconclusiveness of Dr. Starrett's findings

23  demonstrate the absence of support for a intellectual disability finding.

24      The ALJ further noted Dr. Malini's conclusions that plaintiff "appeared to have average

25  intelligence" and that borderline mild mental retardation is "questionable." (AR 474.) Despite questions

26  regarding her intellectual functioning, Dr. Malini found plaintiff "is able to understand, carry out and

27  remember simple instructions," "to relate to co-workers, supervisors and the public," "to take public

28  transportation," "to accommodate herself to usual work situations and changes in routine work settings,"

1    and "to have sustained concentration, persistence and pace." (AR 474.)

2        Dr. Collado, verified by Dr. Bobba, noted plaintiff's impairments were not severe. (AR 483.)

3    In addition to Dr. Starrett and Dr. Malini, Dr. Gurdin, a consultative orthopedist, questioned plaintiff's

4    effort and noted her apparent exaggeration in light of minimal objective physical findings. (AR 192.)

5    Moreover, the record is replete with notations that during the time in question, plaintiff was able to care

6    for personal needs, to cook, to grocery shop, to perform household chores, to leave her home to shop and

7    to go to the doctor, to care for her son, to attend church, to take public transportation, and to figure out

8    her bills. (AR 95, 96, 97, 98, 100, 101, 103, 371, 372, 377.) Plaintiff did not exhibit unusual behavior

9    or fears. (AR 98.) Plaintiff received no mental health treatment. (AR 243.)

10       Plaintiff criticizes the ALJ's comments regarding plaintiff's demeanor and ability to testify at

11   the hearing. Plaintiff argues the "ALJ cannot assess I.Q. based on basic questioning and is not qualified

12   to determine whether a particular claimant is depressed." The Commissioner responds that the ALJ's

13   comments that plaintiff appeared alert, understood questions, and answered appropriately despite her

14   subjective allegations support the ALJ's conclusion on plaintiff's mental status.

15       Although the Ninth Circuit Court of Appeals disapproves of so-called "sit and squirm"

16   jurisprudence, *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985), the "inclusion of the ALJ's

17   personal observations does not render the decision improper," *Verduzco v. Apfel*, 188 F.3d 1087, 1090

18   (9th Cir. 1999) (quoting *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999));

19   *see Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ relied on claimant's demeanor at

20   hearing and found that "she seemed to engage in considerable histrionic exaggeration."). The record

21   reflects that the ALJ did not engage in "sit and squirm" jurisprudence, and nothing suggests the ALJ's

22   comments regarding plaintiff's demeanor and ability to testify render his decision improper.

23       Plaintiff further faults the ALJ's failure to ask vocational expert Ms. Ferra the impact of

24   plaintiff's "borderline intellectual functioning on the ability to work." The ALJ commented on

25   hypotheticals during the hearing:

26           . . . The vocational expert was asked to consider a hypothetical individual with the
             claimant's age, who was illiterate, who was limited to light exertion and who presumably
27           had a work history as a janitor. The vocational expert testified that assuming the
             claimant's specific work restrictions and vocational profile, she would be capable of
28           doing her past janitorial work and also capable of doing other light work. While the

                                                    13

1    vocational expert was given another hypothetical to consider based on the limitations and
2    work history testified to by the claimant, since these limitations are not supported by
     objective evidence, the response to this hypothetical is not relevant.  (AR 222.)

3        An ALJ may properly "limit a hypothetical to those impairments that are supported by substantial

4    evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  "An ALJ is free to

5    accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."

6    *Osenbrock*, 240 F.3d at 1165; *see Magallanes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989).  The

7    parameters of an ALJ's hypotheticals need not "include any alleged impairments that the ALJ has

8    rejected as untrue." *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997).  An ALJ is not bound to accept

9    restrictions in a hypothetical question of claimant's counsel. *Martinez v. Heckler*, 807 F.2d 771, 773

10   (9th Cir. 1986).

11       Based on the status of the evidence, plaintiff fails to substantiate ALJ error regarding his

12   hypotheticals to Ms. Ferra.  Plaintiff's borderline intellectual functioning was questionable and

13   unsupported by medical opinion or substantial evidence.  The ALJ was free to exclude from

14   hypotheticals limitations not supported by substantial evidence.  Moreover, the ALJ evaluated and

15   properly rejected the hypotheticals posed by plaintiff's counsel to Ms. Ferra.  (AR 248.)

16       Lastly, the Commissioner contends that the difference between the ALJ decision at issue here

17   and the December 27, 2001 decision on plaintiff's second application does not warrant remand.  The

18   ALJ's purview was limited to April 22, 1998 to August 25, 2000, and the December 27, 2001 decision

19   addressed plaintiff's condition thereafter.  The Commissioner correctly notes that the ALJ had the

20   December 27, 2001 decision in mind when the ALJ "strongly recommended" a continuing disability

21   review in light of plaintiff young age and "evidence of malingering."  (AR 224.)

22                              **CONCLUSION AND ORDER**

23       For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

24   properly concluded plaintiff was not disabled during April 22, 1998 to August 25, 2000.  This Court

25   further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based

26   on proper legal standards.  Accordingly, this Court DENIES plaintiff's request to reverse the

27   Commissioner's determination and to remand for further proceedings. This Court DIRECTS the Court's

28   clerk to enter judgment in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security,

1  and against plaintiff Maricruz Aguirre and to close this action.

2       IT IS SO ORDERED.

3  **Dated:    July 22, 2005**                    **/s/ Lawrence J. O'Neill**
   66h44d                              UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28